

P.O. Box 92628
Southlake, Texas 76092
Phone: (817) 749-1705
Fax: (817) 749-1702
www.tractionexperts.com



Russell J. Kendzior
russ@tractionexperts.com

May 5, 2014

Mr. Marc Chastain
The Marye Law Firm
2619 Hibernia St.
Dallas, TX 75204

**Re: Cause No. 7:13-cv-0150-O Billy S. Walkup vs. Tyson Foods, Inc.**

Dear Mr. Chastain;

Please accept the following preliminary report as my opinion as it relates to Mr. Shawn Walkup's stairway slip-and-fall event that occurred on or about November 1st, 2011 at the Vernon Texas Tyson Foods plant. In preparing this report I have reviewed the Defendant's Initial Disclosures along with the Tyson Foods Initial Report of Illness reports.

## Background

It is my understanding that at approximately 12:30 a.m. on November 1st, 2011 the Plaintiff, Mr. Shawn Walkup, was an employee of Tyson Foods, Inc., and in the course of him performing his job was egressing down the Defendants stairway when he slipped and fell. It is my understanding that the stairway in question was wet from water and was very slippery.

## Credentials

I am an expert in the area of pedestrian safety-slip, trip-and-fall prevention and an independent safety consultant. I consider myself qualified to render expert opinions on the issues associated with this case. I am the founder of Traction Plus, Inc. (d/b/a Traction Experts, Inc.) a leading manufacturer of floor safety products and services. Traction Plus, Inc. has experience in producing and marketing a complete line of High-Traction floor coatings and cleaning products, warning signs, safety matting, and slip resistant footwear. Traction Experts, Inc. is recognized by the insurance and risk management industries as a leading expert in the field of slip-and-fall prevention. My areas of expertise include slip, trip-and-fall prevention, walking and working surfaces, floor safety, footwear slip resistance, walkway code compliance, OSHA walking and working surface compliance, and ADA/TAS Compliance.

I am a former member of the Board of Delegates for National Safety Council (NSC), Founder and President of the National Floor Safety Institute (NFSI), and the Secretary of the American National Standards Institute's (ANSI) B101 committee for the

prevention of slips, trips and falls. I am a member of the American Society of Testing and Materials (ASTM) and serve on six ASTM standards committees. The ASTM and ANSI standards are often cited within federal laws, treaties and statutes including: the American's with Disabilities Act (ADA), Texas Accessibility Standard (TAS), and the Occupational Safety and Health Administration (OSHA). I have provided expert opinions in over four hundred cases involving litigation, provided deposition testimony approximately one hundred times and have testified at trial approximately thirty times.

Slips-and-falls resulting from wet floor hazards are a leading cause of both employee and guest injuries. For this reason, most commercial property owners have adopted a rigorous walkway inspection, and maintenance program as well as a comprehensive employee-training program. It is unclear as to the Defendant's policies regarding walkway safety, walkway inspections, as well as employee safety training guidelines, however, based on the Defendant's employee's deposition testimony, it is clear that such policies and procedures were either non-existent or inadequate.

**Industry Standards**

Section 5.1.4 (enclosed) of the American Society of Testing and Materials (ASTM) F-1637-09 entitled "Standard Practice for Safe Walking Surfaces" requires that "Interior walkways that are not slip resistant when wet shall be maintained dry during periods of pedestrian use."

> Sub-section 7.1.2 requires that: "Step nosings shall be readily discernible, slip resistant, and adequately demarcated. Random, pictorial, floral, or geometric designs are examples of design elements that can camouflage a step nosing.

This requirement is echoed in The Occupational Health and Safety Administration (OSHA) CFR 1910.24, Section (f) which requires the "All treads be reasonably slip resistant and the nosings shall be of non-slip finish." The nosings on stairway in question were not in compliance with this standard.

Section 11. "Warnings" Sub-section 11.1 requires that: "The use of visual cues such as warnings, accent lighting, handrails, contrast painting, and other cues to improve the safety of walkway transitions are recognized as effective controls in some applications. However, such cues or warnings do not necessarily negate the need for safe design and construction."

> Sub-section 11.2 states that: "When relying on applications of color as a warning, provide colors and patterns that provide conspicuous markings for the conditions being delineated, their surroundings, and the environment in which they will be viewed by users. Bright yellow is a commonly used color for alerting users of the presence of certain walkway conditions. When properly applied and maintained, other colors can also provide effective warnings."

It is the generally accepted safety practice to post wet floor signs adjacent to areas

where wet floors or stairs may present a slip hazard. It is my understanding that wet floor signs were not posted at or near the staircase and therefore Mr. Walkup was not properly warned as to the impending slip-and-fall hazard created by the wet steps. The need to properly post warning signs is required under the U.S. Code of Federal Regulations CFR 29 section 1910.145.

Section 7. of the ANSI A1264.2-2006 standard entitled "Housekeeping" Sub-section 7.1 "General" Requires that: "A housekeeping program shall be implemented to maintain safe walking-working surfaces.

> E7.1 A written housekeeping program is recommended to ensure consistency and quality. The program should describe materials, equipment, scheduling, methods, and training of those conducting housekeeping."
>
> Sub-section 7.4 "*Supervision*." The housekeeping conditions shall be monitored and a person(s) shall be authorized to promptly initiate corrective action(s).
>
> > E7.4 An effective program requires all employees to identify and report potential hazards to appropriate supervision. Documentation of monitoring can assist in identifying hazards (e.g. areas where repeated spills occur), which will permit better planning and anticipation of such events.
>
> 7.4.1 Monitoring. Monitoring of areas shall include:
> a. Inspecting all walking surfaces;
> b. Arranging for prompt notification of persons responsible for clean up of hazardous conditions;

Section 8. "Warnings" sub-section 8.1 "General." A warning shall be provided whenever a slip/fall hazard has been identified until appropriate corrections can be effected.

> Sub-section 8.1.1 Alternate Route. When there is a slip/fall hazard, which covers an entire walkway, thus making it difficult to safely route personnel around the hazard, barricades shall be used to limit access (see Section 9.1). If appropriate, assign an employee to detour personnel, in conjunction with the appropriate use of warning signs until the barricade can be erected or the hazard removed.

It is my opinion that the Defendant may not have been in compliance with the above named industry standards.

**Opinions**

Based on the facts as presented to me at this time, it is my opinion that Mr. Walkup's slip-and -fall event was predictable and preventable and that if the Defendant had (1.) maintained the steps in a dry condition (2.) barricaded or warned via a posted warning

of the impending stairway hazardous condition and (3.) used a stair tread that would provide superior slip resistance when wet, Mr. Walkup would not have been exposed to a wet floor hazard and subsequently slipped and fallen. It is my view that the failure to respond to the hazard is most likely that of a combination in improper employee safety training, vague maintenance and inspection policies, and the lack of urgency on the part of the Defendant's safety and or maintenance/housekeeping staff.

It is my further opinion that the Defendant, had failed in their responsibility to provide a safe walking surface for their workers, specifically Mr. Walkup, and in doing so, created an unreasonably dangerous condition. Had the Defendant been in compliance with the industry safety and maintenance standards, which include proper hazard removal, the proper posting of wet floor signs/barricading, providing slip resistant stair nosings, and walkway inspection procedures, it is unlikely that Mr. Walkup would have slipped and fallen.

In conclusion it is my opinion that the Defendants did not exercise reasonable care as it relates to the safety of their walkways and stairways and therefore were negligent in their duty to protect their workers, specifically Mr. Walkup, from the risk of injury. Had the Defendant exercised reasonable care as it relates to their walkways, it is unlikely that Mr. Walkup would have slipped and fallen. I reserve the right to amend my opinions as new information may be presented to me in the future.

Regards,

Russell J. Kendzior
President



Designation: F 1637 – 09

An American National Standard

# Standard Practice for Safe Walking Surfaces[1]

This standard is issued under the fixed designation F 1637; the number immediately following the designation indicates the year of original adoption or, in the case of revision, the year of last revision. A number in parentheses indicates the year of last reapproval. A superscript epsilon (ε) indicates an editorial change since the last revision or reapproval.

## 1. Scope

1.1 This practice covers design and construction guidelines and minimum maintenance criteria for new and existing buildings and structures. This practice is intended to provide reasonably safe walking surfaces for pedestrians wearing ordinary footwear. These guidelines may not be adequate for those with certain mobility impairments.

1.2 Conformance with this practice will not alleviate all hazards; however, conformance will reduce certain pedestrian risks.

1.3 The values stated in inch-pound units are to be regarded as standard. The values given in parentheses are mathematical conversions to SI units that are provided for information only and are not considered standard.

1.4 *This standard does not purport to address all of the safety concerns, if any, associated with its use. It is the responsibility of the user of this standard to establish appropriate safety and health practices and determine the applicability of regulatory limitations prior to use.*

## 2. Referenced Documents

2.1 *ASTM Standards:*[2]

F 1646 Terminology Relating to Safety and Traction for Footwear

## 3. Terminology

3.1 See Terminology F 1646 for the following terms used in this practice:

3.1.1 Bollard,

3.1.2 Carpet,

3.1.3 Cross slope,

3.1.4 Element,

3.1.5 Fair,

3.1.6 Foreseeable pedestrian path,

3.1.7 Footwear,

3.1.8 Planar,

3.1.9 Ramp,

3.1.10 Sidewalk,

3.1.11 Slip resistance,

3.1.12 Slip resistant,

3.1.13 Walkway surface hardware, and

3.1.14 Walkway.

## 4. Significance and Use

4.1 This practice addresses elements along and in walkways including floors and walkway surfaces, sidewalks, short flight stairs, gratings, wheel stops, and speed bumps. Swimming pools, bath tubs, showers, natural walks, and unimproved paths are beyond the scope of this practice.

## 5. Walkway Surfaces

5.1 *General:*

5.1.1 Walkways shall be stable, planar, flush, and even to the extent possible. Where walkways cannot be made flush and even, they shall conform to the requirements of 5.2 and 5.3.

5.1.2 Walkway surfaces for pedestrians shall be capable of safely sustaining intended loads.

5.1.3 Walkway surfaces shall be slip resistant under expected environmental conditions and use. Painted walkways shall contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where wet conditions may be reasonably foreseeable.

5.1.4 Interior walkways that are not slip resistant when wet shall be maintained dry during periods of pedestrian use.

5.2 *Walkway Changes in Level:*

5.2.1 Adjoining walkway surfaces shall be made flush and fair, whenever possible and for new construction and existing facilities to the extent practicable.

5.2.2 Changes in levels of less than ¼ in. (6 mm) in height may be without edge treatment. (See Fig. 1.)

5.2.3 Changes in levels between ¼ and ½ in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).

5.2.4 Changes in levels greater than ½ in. (12 mm) shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

5.3 *Carpet:*

---

[1] This practice is under the jurisdiction of ASTM Committee F13 on Pedestrian/Walkway Safety and Footwear and is the direct responsibility of Subcommittee F13.50 on Walkway Surfaces.

Current edition approved July 1, 2009. Published July 2009. Originally approved in 1995. Last previous edition approved in 2007 as F 1637 – 07.

[2] For referenced ASTM standards, visit the ASTM website, www.astm.org, or contact ASTM Customer Service at service@astm.org. For *Annual Book of ASTM Standards* volume information, refer to the standard's Document Summary page on the ASTM website.

Copyright © ASTM International, 100 Barr Harbor Drive P.O. box C-700 West Conshohocken, Pennsylvania 19428-2959, United States



Copyright by ASTM Int'l (all rights reserved); Mon Nov 9 17:56:19 EST 2009
Downloaded/printed by
Russell Kendzior (NFSI) pursuant to License Agreement. No further reproductions authorized.




**FIG. 1 Changes in Levels of Less Than ¼ in. (6 mm)**

5.3.1 Carpet shall be maintained so as not to create pedestrian hazard. Carpet shall be firmly secured and seams tightly maintained. Carpet shall not have loose or frayed edges, unsecured seams, worn areas, holes, wrinkles or other hazards that may cause trip occurrence.

5.3.2 Carpet on floor surfaces shall be routinely inspected. Periodic restretching may become necessary. Periodic inspection is particularly important at step nosing edges.

5.3.3 Carpet and carpet trim (as measured when compressed) shall meet the transition requirements of 5.2.

5.3.4 Shag-type carpet shall not be used on stair treads. Carpeting should be firmly secured onto the tread and around the nosing.

5.4 *Mats and Runners*:

5.4.1 Mats, runners, or other means of ensuring that building entrances and interior walkways are kept dry shall be provided, as needed, during inclement weather. Replacement of mats or runners may be necessary when they become saturated.

5.4.2 Building entrances shall be provided with mats or runners, or other means to help remove foreign particles and other contaminants from the bottom of pedestrian footwear. Mats should be provided to minimize foreign particles, that may become dangerous to pedestrians particularly on hard smooth floors, from being tracked on floors.

5.4.3 Mats or runners should be provided at other wet or contaminated locations, particularly at known transitions from dry locations. Mats at building entrances also may be used to control the spread of precipitation onto floor surfaces, reducing the likelihood of the floors becoming slippery.

5.4.4 Mats shall be of sufficient design, area, and placement to control tracking of contaminants into buildings. Safe practice requires that mats be installed and maintained to avoid tracking water off the last mat onto floor surfaces.

5.4.5 Mats, runners, and area rugs shall be provided with safe transition from adjacent surfaces and shall be fixed in place or provided with slip resistant backing.

5.5 *Illumination*:

5.5.1 Minimum walkway illumination shall be governed by the requirements of local codes and ordinances or, in their absence, by the recommendations set forth by the Illuminating Engineering Society of North America (IES) (Application and Reference Volumes).

5.5.2 Illumination shall be designed to be glare free.

5.5.3 Illumination shall be designed to avoid casting of obscuring shadows on walkways, including shadows on stairs that may be cast by users.

5.5.4 Interior and exterior pedestrian use areas, including parking lots, shall be properly illuminated during periods when pedestrians may be present.

5.6 *Headroom*—A minimum headroom clearance of 6 ft 8 in. (2.03 m), measured from the walkway surface, shall be provided above all parts of the walkway. Where such clearance is not provided in existing structures, the low clearance portions of the walkway shall be safely padded, marked with safety contrast color coding and posted with appropriate warning signs.

5.7 *Exterior Walkways*:

5.7.1 Exterior walkways shall be maintained so as to provide safe walking conditions.

5.7.1.1 Exterior walkways shall be slip resistant.

5.7.1.2 Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that pieces may be readily removed.

5.7.2 Exterior walkways shall be repaired or replaced where there is an abrupt variation in elevation between surfaces. Vertical displacements in exterior walkways shall be transitioned in accordance with 5.2.

5.7.3 Edges of sidewalk joints shall be rounded.

## 6. Walking Surface Hardware

6.1 Walking surface hardware within foreseeable pedestrian paths shall be maintained flush with the surrounding surfaces; variances between levels shall be transitioned in accordance with 5.2.

6.2 Walking surface hardware within foreseeable pedestrian paths shall be maintained slip resistant.

6.3 Walking surface hardware shall be installed and maintained so as to be stable under reasonable foreseeable loading.

## 7. Stairs

7.1 *General*:

7.1.1 Stairways with "distracting" forward or side views shall be avoided. A "distracting" view is one which can attract the stair user's attention, (for example, advertisements, store displays), thus distracting the stair user.

7.1.2 Step nosings shall be readily discernible, slip resistant, and adequately demarcated. Random, pictorial, floral, or geometric designs are examples of design elements that can camouflage a step nosing.

7.1.3 Doors shall not open over stairs.

7.1.4 Structure (reserved).

7.2 *Short Flight Stairs (Three or Fewer Risers)*:

7.2.1 Short flight stairs shall be avoided where possible.

7.2.2 In situations where a short flight stair or single step transition exists or cannot be avoided, obvious visual cues shall be provided to facilitate improved step identification. Handrails, delineated nosing edges, tactile cues, warning signs, contrast in surface colors, and accent lighting are examples of some appropriate warning cues.

## 8. Speed Bumps

8.1 Design to avoid the use of speed bumps.

8.2 All speed bumps which are in foreseeable pedestrian paths shall comply with 5.2 (walkway changes in level).

8.3 Existing speed bumps, that do not conform to 5.2, shall be clearly marked with safety color coding to contrast with surroundings. Painted speed bumps shall be slip resistant. Pedestrian **CAUTION** signs are recommended.



Copyright by ASTM Int'l (all rights reserved); Mon Nov 9 17:56:19 EST 2009
Downloaded/printed by
Russell Kendzior (NFSI) pursuant to License Agreement. No further reproductions authorized.

## 9. Wheel Stops

9.1 Parking lots should be designed to avoid the use of wheel stops.

9.2 Wheel stops shall not be placed in pedestrian walkways or foreseeable pedestrian paths.

9.3 Wheel stops shall be in contrast with their surroundings.

9.4 Wheel stops shall be no longer than 6 ft (1.83 m) and shall be placed in the center of parking stalls. The minimum width of pedestrian passage between wheel stops shall be 3 ft (0.91 m).

9.5 The top of wheel stops shall not exceed 6.5 in. (165 mm) in height above the parking lot surface.

9.6 Adequate illumination shall be maintained at wheel stops as governed by the requirements of local codes and ordinances or, in their absence, by the recommendations set forth by the Illuminating Engineering Society of North America (IES-Application and Reference Volumes).

9.7 Bollards, not less than 3 ft 6 in. (1.07 m) height, may be placed in the center of parking stalls as an alternative to wheel stops. Bollards should be appropriately marked to enhance visibility.

## 10. Gratings

10.1 Gratings used in public areas should be located outside of pedestrian walkways.

10.2 Gratings located in foreseeable pedestrian walkways shall not have openings wider than ½ in. (13 mm) in the direction of predominant travel.

10.2.1 *Exemption*—The requirements of 10.2 do not apply in areas where footwear worn is controlled (for example, industrial areas).

10.3 Gratings with elongated openings shall be placed with the long dimension perpendicular to the direction of predominant travel.

10.4 Gratings shall be maintained slip resistant.

## 11. Warnings

11.1 The use of visual cues such as warnings, accent lighting, handrails, contrast painting, and other cues to improve the safety of walkway transitions are recognized as effective controls in some applications. However, such cues or warnings do not necessarily negate the need for safe design and construction.

11.2 When relying on applications of color as a warning, provide colors and patterns that provide conspicuous markings for the conditions being delineated, their surroundings, and the environment in which they will be viewed by users. Bright yellow is a commonly used color for alerting users of the presence of certain walkway conditions. When properly applied and maintained, other colors can also provide effective warnings.

## 12. Keywords

12.1 carpet; floors; gratings; mats; runners; sidewalks; short flight stairs; slip resistance; speed bump; stairs; walkway; wheel stop

*ASTM International takes no position respecting the validity of any patent rights asserted in connection with any item mentioned in this standard. Users of this standard are expressly advised that determination of the validity of any such patent rights, and the risk of infringement of such rights, are entirely their own responsibility.*

*This standard is subject to revision at any time by the responsible technical committee and must be reviewed every five years and if not revised, either reapproved or withdrawn. Your comments are invited either for revision of this standard or for additional standards and should be addressed to ASTM International Headquarters. Your comments will receive careful consideration at a meeting of the responsible technical committee, which you may attend. If you feel that your comments have not received a fair hearing you should make your views known to the ASTM Committee on Standards, at the address shown below.*

*This standard is copyrighted by ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA 19428-2959, United States. Individual reprints (single or multiple copies) of this standard may be obtained by contacting ASTM at the above address or at 610-832-9585 (phone), 610-832-9555 (fax), or service@astm.org (e-mail); or through the ASTM website (www.astm.org).*



Copyright by ASTM Int'l (all rights reserved); Mon Nov 9 17:56:19 EST 2009
Downloaded/printed by
Russell Kendzior (NFSI) pursuant to License Agreement. No further reproductions authorized.